

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
    **JUDGE**

## LETTER OPINION

May 7, 2009

Jennifer H. Walker
Binder & Binder, PC
215 Park Avenue South
6th Floor
New York, NY 10003
*(Attorney for Plaintiff Myrna L. Pereira)*

Som Ramrup
Office of the U.S. Attorney
26 Federal Plaza
Room 3904
New York, NY 10278
*(Attorney for Defendant Commissioner of Social Security)*

    Re:   **Myrna L. Pereira v. Commissioner of Social Security**
            **Civil Action No. 2:08-CV-3897 (WJM)**

Dear Counsel:

    Plaintiff Myrna L. Pereira brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking a review of a final determination by the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court did not hold oral argument. Fed. R. Civ. P. 78. For the following reasons, the Court **REMANDS** the present matter, specifically with respect to step two of the sequential analysis of disability determination.

## BACKGROUND AND PROCEDURAL HISTORY

Since the parties are familiar with the procedural history and facts of this case, the Court will recount the relevant background in summary fashion. Plaintiff filed an application for DIB and SSI on October 1, 2001, alleging a disability due to asthma, high blood pressure, arthritis, migraine headaches, and sinus problems. (R. 71-76.) After filing her application, Plaintiff further asserted that she suffered from depression. (R. 139.) Plaintiff's applications were denied initially and upon reconsideration. (R. 35-36, 292.) A hearing was held on March 4, 2004 before Administrative Law Judge ("ALJ") Dennis O'Leary. The ALJ determined that Plaintiff was not disabled, because Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work and could return to her past relevant work as a data entry clerk. (R. 303-11.)

Following a request for review, the Appeals Council remanded this matter, finding that the ALJ improperly: (1) considered Plaintiff's job as a data entry clerk as past relevant work; (2) failed to evaluate the RFC opinion of Dr. Ismael Morales Diaz; and (3) neglected to include any mental limitations in Plaintiff's RFC. (R. 314-15.) Upon remand, the ALJ held hearings on April 21, 2005 and October 21, 2005.

In a decision dated December 14, 2005, the ALJ again found that Plaintiff was not disabled. The ALJ concluded that Plaintiff retained the RFC for light work with a sit/stand option. (R. 28-34.) Based on testimony of a vocational expert, the ALJ found that Plaintiff could work in light unskilled positions, such as a weigher, scaler, or parts inspector, which existed in significant numbers in the national and local economy. (R. 34.) Plaintiff again requested a review and the decision was affirmed on June 20, 2008. (R. 8-13.) On August 4, 2008, Plaintiff commenced the present action.

## DISABILITY EVALUATION

A reviewing court must affirm an ALJ's decision if based on the correct legal standard and if the factual findings are supported by substantial evidence from the record. 42 U.S.C. §§ 405(g), 1383(c)(3); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008) (citations omitted).

The Social Security Administration employs a five-step process to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. First, at step one, the Commissioner inquires into whether the claimant engaged in substantial gainful activity since his or her alleged disability onset date. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner evaluates at step two whether the claimant's impairment or combination of impairments qualify as "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant possesses a severe impairment, the Commissioner questions in step three whether the impairment

2

meets or equals the criteria of an impairment found in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant automatically receives benefits. If not, the Commissioner proceeds to step four. *Id.* §§ 404.1520(d), 416.920(d). In step four, the Commissioner considers whether, despite the severe impairment, the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the ultimate burden of establishing steps one through four. At step five, the burden shifts to the Social Security Administration to show that the claimant has the capability–in light of the claimant's age, education, work experience, and RFC–to perform other jobs that exist in significant numbers in the national economy. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## DISCUSSION

On appeal, Plaintiff makes two arguments. First, the ALJ erred by not classifying Plaintiff's depression as a "severe impairment" for purposes of step two. Second, the ALJ improperly discredited the opinion of Plaintiff's treating physician Dr. Ismael Morale Diaz at step four.

### A.   Evaluation of Treating Physician's Opinion

Generally, a treating physician's opinion receives substantial and sometimes controlling weight because a treating physician can "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from [other sources]." 20 C.F.R. § 404.1527(d)(2). However, a treating physician's opinion is only controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in [claimant's] record." 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is conclusory, lacking explanation, and inconsistent with other medical evidence in the record, the ALJ may choose not to defer to the opinion. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The ALJ may not "reject evidence for no reason or for the wrong reason." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

In November 2003, Dr. Diaz found that Plaintiff could only sit for one to two hours in an eight hour day, stand/walk for zero to one hours, and needed to get up and move around every thirty minutes. Dr. Diaz further opined that Plaintiff could never lift or carry between zero and five pounds, could not grasp, turn or twist, and could not use her hands for fine manipulation. (R. 236-40.)

The ALJ determined that Dr. Diaz's opinion was "unsupported by clinical findings" and lacked "treating notes to support his conclusion." (R. 32.) The ALJ cited contradictory medical evidence from Dr. Jean Messihi and testimony from Dr. Martin Fechner. (*Id.*) While Dr. Diaz found that Plaintiff could not grasp, turn or twist, and could not use her hand

3

for fine manipulation, Dr. Messihi stated in March 2003 that Plaintiff had full range of motion in her joints and upper extremities, including her wrists and fingers, with a good grip. (R. 138-39.)  He further found that Plaintiff had no rheumatoid or osteoarthritic deformities and had a full range of motion in her hips, knees, and ankles. (R. 139.)

Based on a thorough review of the medical records, Dr. Fechner testified that Plaintiff would be restricted to "light activities," could lift twenty pounds occasionally and ten pounds frequently, and would be able to stand and/or walk in an aggregate of six hours in an eight hour day. (R. 700.)  Plaintiff's own testimony supports this conclusion.  At the hearing, she stated that she is able to lift and carry ten to twenty pounds without difficulty. (R. 714.)

Even though the ALJ did not reject Dr. Diaz's opinion for "no reason or the wrong reason," Plaintiff argues that the ALJ erred by not re-contacting Dr. Diaz to obtain additional evidence or further clarification with regards to his opinion.  However, under relevant regulations, the Commissioner will only re-contact a medical source when the evidence received is inadequate to reach a determination. 20 C.F.R. § 404.1512(e).  The ALJ did not find Dr. Diaz's opinion to be unclear or ambiguous and did not indicate that the record lacked the necessary evidence to render a decision.  As such, the ALJ properly discredited Dr. Diaz's opinion for purposes of step four.

**B.     Severity of Plaintiff's Depression**

The same conclusion, however, does not apply to the ALJ's analysis at step two. Step two represents a *de minimis* screening device to dispose of groundless claims. *Newell v. Commissioner*, 347 F.3d 541, 546 (3d Cir. 2003).  A claimant bears a very light burden in establishing that an impairment is legally severe and need only demonstrate something beyond "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004).  Any doubt as to whether this showing has been made is to be resolved in favor of the claimant. *Id.*

Here, the ALJ determined that Plaintiff's depression was not severe in light of Plaintiff's history substances abuse and failure to comply with treatment recommendations. Plaintiff tested positive for cocaine, benzodiazepines, barbiturates, and cannabinoids during a May 2003 hospitalization for "suicidal ideation." (R. 31.)  Following hospitalization, Plaintiff failed to comply with treatment recommendations because she found the facility where treatment was given "depressing." (*Id.*)  The ALJ questioned the veracity of Plaintiff's allegations, reasoning that "if the claimant's symptoms were as severe as alleged, she would likely seek treatment either there or at another, more pleasant, facility." (*Id.*)

To support this conclusion, the ALJ relied on the opinion Dr. Aryeh Klahr and testimony of Dr. Fechner. (*Id.*)  In July 2003, Dr. Klahr found that Plaintiff did not suffer

4

from delusion or current hallucinations and did not possess deficits of attention, concentration, or memory.  (*Id.*)  Dr. Klahr adjudged Plaintiff's insight and judgement as fair and believed that Plaintiff could follow simple instructions in a structured environment with a sympathetic supervisor.  (*Id.*)  Dr. Fechner testified at the hearing that cocaine abuse could exacerbate Plaintiff's psychiatric symptoms.  (*Id.*)

The ALJ's analysis, however, ignores other relevant medical records relating to Plaintiff's depression.  Prior to being hospitalized in May 2003, Plaintiff complained to her primary care physician, Dr. Norma Roche, about her mood.  (R. 157.)  On March 5, 2003, Dr. Roche diagnosed Plaintiff with depression and prescribed her Zoloft.  (*Id.*)  Dr. Roche echoed this diagnosis on April 2, 2003.  (R. 156.)  In July 2003, Dr. Klahr acknowledged that Plaintiff suffered from major depression and recommended continued psychiatric and psychopharmacological treatment.  (R. 199.)  Moreover, on August 21, 2003, Dr. M. Apacible noted Plaintiff's depression, after a review of the medical records, finding that Plaintiff had: (1) moderate difficulties in maintaining concentration, persistence, or pace; (2) one or two episodes of deterioration each of extended duration; and (3) moderate limitations in the ability to respond to changes in the work setting.  (R. 211, 216.)  A September 12, 2003 intake evaluation from St. Mary's Hospital Community Mental Health Center also mentioned Plaintiff's major recurrent depression and stated that Plaintiff had a GAF of 50-60.  (R. 258.)

In light of the above, the medical evidence adduced by Plaintiff demonstrates that Plaintiff received treatment for depression since April 2003, took antidepressants, and possessed a GAF of 50-60 after her hospitalization.  There is also some evidence that she had difficulty in maintaining concentrations, persistence, or pace, as well as moderate limitations in her ability to respond to changes in the work setting.  This is more than enough to satisfy step two's *de minimus* threshold.  Accordingly, the ALJ's determination at step two is not supported by "substantial evidence."  For that reason, this matter is reversed and remanded for further proceedings, which will allow the medical evidence to be weighed and evaluated at the latter steps in the sequential analysis.

## CONCLUSION

For the foregoing reasons, the Court **REMANDS** the present matter, specifically with respect to step two of the sequential analysis of disability determination.  An appropriate Order accompanies this Letter Opinion.

s/William J. Martini   
**William J. Martini, U.S.D.J.**